```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                  JACKSON DIVISION
```

**SANFORD LAMAR BAILEY, JR.**                                    **PLAINTIFF**

VS.                                       CIVIL ACTION NO.3:05-CV-266BS

**CITY OF RIDGELAND, MISSISSIPPI,**
**GENE MCGEE, INDIVIDUALLY AND**
**MIKE CROOK, INDIVIDUALLY**                                     **DEFENDANTS**

<u>**OPINION AND ORDER**</u>

This cause is before the Court on the Motion for Summary Judgment of Defendants. Having considered the Motion, Response, Rebuttal and all attachments to each, as well as supporting and opposing authority, the Court finds that the Motion is well taken and should be granted.

**I.   Factual Background and Procedural History**

Plaintiff Sanford Lamar Bailey, Jr., a resident of the City of Ridgeland, Mississippi ("the City"), brings this 42 U.S.C. § 1983 action against the City, its current mayor Gene McGee, and former alderman Mike Crook, alleging numerous constitutional and federal law violations.[1]

---

[1] Plaintiff is proceeding in this case *pro se*; therefore, his pleadings must be liberally construed. <u>Pena v. United States of America</u>, 122 F.3d 3, 4 (5th Cir. 1997). Although Plaintiff fails to cite to 42 U.S.C. § 1983 in his Complaint, Plaintiff is clearly proceeding under a § 1983 cause of action in raising his constitutional and federal law claims.

In 1996, Plaintiff, an automobile dealer, began housing automobiles on property he owned in Ridgeland, Mississippi. The property consisted of two adjacent lots, located at 645 and 649 South Wheatley Street ("Wheatley Street property"). In violation of a City ordinance restricting the number of vehicles that can be parked on a residential property, Plaintiff was ticketed by City officials on several occasions for having an excessive number of vehicles on the property. After each ticket was issued, a City judge ordered Plaintiff to remove the vehicles and comply with the ordinance. Plaintiff would thereafter remove the vehicles temporarily, but would eventually bring the vehicles back to the property.

In an attempt to resolve their differences, the City and Plaintiff entered into a written agreement on March 18, 1997. Under the terms of the agreement, Plaintiff was required to purchase a privilege license to operate his auto sales business and in turn, the City allowed him to have no more than six visible vehicles and no more than ten total vehicles on his property at one time. Although Plaintiff applied for and received the privilege licence in 1998, he failed to renew the license in 1999, despite receiving several notices from the City informing him that the license had expired. A municipal judge later determined that a license was not necessary because applicable zoning ordinances prevented Plaintiff from operating a business on the Wheatley Street Property.

In 1999, Plaintiff petitioned the City to have his property rezoned commercial. At Plaintiff's request, a public hearing on the rezoning issue was held on July 6, 1999. Plaintiff was allowed to speak at the hearing and respond to various objections made by other residents who opposed the rezoning. The board of aldermen for the City rejected the request to rezone, and Plaintiff chose not to appeal the decision. A second petition for rezoning was subsequently filed, but Plaintiff failed to pursue the petition.

To date, Plaintiff continues to operate his business on the property in violation of various City ordinances. The City has cited Plaintiff on numerous occasions for violations of zoning ordinances, the "Junk Vehicle" ordinance, and the Property Maintenance Code. Plaintiff has temporarily removed some of the vehicles on the property in an attempt to comply with the ordinances, but continues to bring the vehicles back to the Wheatley Street Property.

In 2004, Defendant Mike Crook, who at the time, was an alderman for the City, approached Plaintiff and his brother about purchasing the Wheatley Street property. Crook informed Plaintiff that if he obtained the property, he intended to have the property rezoned commercial. Plaintiff and his brother allegedly counteroffered, but the counteroffer was rejected.[2] The next year,

---

[2] Plaintiff's brother, Dr. James Bailey, apparently purchased the property from Plaintiff at some point between 1996 and 2004.

Crook sponsored an ordinance entitled "An Ordinance Creating a Mechanism for the Formation and Creation of Neighborhood Preservation Overlay Districts" ("NPOD ordinance"). The proposed NPOD ordinance was approved by the board of aldermen and signed by Mayor McGee on April 5, 2005. The NPOD ordinance allows a resident to petition the City to create a neighborhood preservation overlay district in an area of the City where the petitioner resides. If a district is approved by the City, the property within the district must comply with certain "standards" that are set forth in the ordinance. See Exhibit "M" to Defendant's Motion for Summary Judgment. The NPOD ordinance is only applicable to a portion of the City, including the Wheatley Street property.

Aggrieved by the actions of Defendants, Plaintiff initiated this suit on April 27, 2005. In his Complaint, Plaintiff contends that the City has selectively enforced its ordinances in violation of the Equal Protection Clause of the Fourteenth Amendment as other property owners have had "for-sale" signs on vehicles on their property, but have not been ticketed. He also claims that the NPOD ordinance violates his Fourteenth Amendment rights because the ordinance only affects a portion of the City. Further, Plaintiff alleges that his Seventh Amendment rights were violated after he requested and was denied a trial by jury each time he appeared in municipal court for the various citations he was issued. Plaintiff also urges that the City has violated his First Amendment rights

4

because "the Mayor has not allowed [him] any consideration whatsoever and [he] has [sic] met with increased scrutiny by City officials especially after trying to address the Board and resolve the conflict." Complaint, unnumbered p. 3. Because his business provides many single mothers an opportunity to purchase affordable transportation, Plaintiff further alleges that the City's attempt to shut down his automobile dealership violates his rights as well as the rights of his customers under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq. Finally, Plaintiff believes his Fourth Amendment rights will be violated by the NPOD ordinance because it authorizes unlawful searches "under the guise of a building inspection."

On April 4, 2006, Defendants filed the instant Motion for Summary judgment. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and will now consider Defendant's Motion.

## II. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The United States Supreme Court has held that this

language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. Id. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes

by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).

### III.   Analysis

### III.A. First Amendment Claim

In his Complaint, Plaintiff asserts that his First Amendment free speech rights were violated because he was not allowed to express certain facts regarding the automobiles on his property. However, in his Response, Plaintiff couches his First Amendment claim in terms of a denial of his right to petition the government for relief from an "extremely hazardous" condition on his property.

Because Plaintiff failed to plead a right to petition claim in the Complaint and has not moved the Court for leave to amend his Complaint, he is now barred from raising this claim. As for an alleged violation of Plaintiff's free speech rights, the Court finds no evidentiary support for this claim. Plaintiff admitted in his Complaint that he was given an opportunity to speak at board meetings about the dispute surrounding the excessive vehicles on his property. Plaintiff produces no evidence that would tend to show that he was denied an rights protected by the First Amendment.

The fact that Plaintiff was unable to make any headway with Mayor McGee or the board does not give rise to a First Amendment violation. Therefore, Plaintiff's First Amendment claim will be dismissed.

### III.B. Fourth Amendment Claim

Plaintiff contends in his Complaint that the NPOD ordinance violates his Fourth Amendment rights as the ordinance authorizes searches of property without a warrant or probable cause. Conversely, Defendants contend that Plaintiff lacks standing to challenge this ordinance. Plaintiff stated in his deposition that his property has never been searched by anyone from the City. Further, Defendants assert that no resident or neighborhood has petitioned the City to create a neighborhood preservation overlay district. Therefore, Defendant reasons that any enforcement provisions in the ordinance do not apply at this time to Plaintiff's property.

To have Article III standing to pursue a claim in a federal forum, a plaintiff must first prove that he has "suffered an 'injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent.'" Fla. Dep't of Ins. v. Chase Bank of Tex. Nat'l Ass'n, 274 F.3d 924, 929 (5th Cir. 2001) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct 2130, 119 L.Ed.2d 351 (1992)). In the instant case, Plaintiff has failed to demonstrate an actual invasion of his

Fourth Amendment rights as the NPOD ordinance has not been used by the City to search his property. Moreover, there is no evidence that a search pursuant to the NPOD ordinance is imminent, especially considering the City has yet to even receive a petition to create an overlay district. The Court therefore finds that Plaintiff does not have adequate standing to challenge the NPOD ordinance and must dismiss Plaintiff's Fourth Amendment claim.

Plaintiff again attempts to raise new allegations in his Response by claiming that his Fourth Amendment rights were breached when City officials trespassed on his property to take pictures. However, Plaintiff's failure to make these allegations in his Complaint precludes him from raising them at this late date.

**III.C. Seventh Amendment Claim**

Next, Plaintiff avers that he was denied his Seventh Amendment right to a trial by jury when he appeared in municipal court to answer to the citations he had received. The Seventh Amendment of the United States Constitution however has not been applied to the States through the Fourteenth Amendment. Woods v. Holy Cross Hosp., 591 F.2d 1164, 1171 n.12 (5th Cir. 1979). Thus, as Defendants correctly point out, state courts are not bound by the requirements of the Seventh Amendment. Id. Plaintiff therefore has no viable Seventh Amendment claim against Defendant.

**III.D. Ninth Amendment Claim**

9

Although Plaintiff cites the Ninth Amendment in the jurisdictional paragraph of the Complaint, he fails to expound on a Ninth Amendment claim. In any event, the Court is unable to find any facts alleged in the Complaint that would give rise to a Ninth Amendment claim. Accordingly, to the extent a Ninth Amendment claim is alleged in the Complaint, it must be dismissed.

**III.E. Fourteenth Amendment Claim**

Plaintiff first argues that the City has infringed upon his Fourteenth Amendment rights through selective enforcement of various City ordinances. To sustain an equal protection selective enforcement claim, "a plaintiff must prove that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." Bryan v. City of Madison, 213 F.3d 267, 277 (5th Cir. 2000). Plaintiff has neither alleged in the Complaint nor presented any evidence that Defendants were motivated by a recognized improper motive.

Alternatively, Plaintiff asserts that the limited applicability of the NPOD ordinance violates the Fourteenth Amendment. However, as the Court determined *supra*, Plaintiff does not have standing to challenge the NPOD ordinance because he has failed to demonstrate an injury-in-fact. See Fla. Dep't Ins., 274 F.3d at 929. Thus, Plaintiff's Fourteenth Amendment claim must also be dismissed.

**III.F. Title II Claim**

Finally, despite asserting a violation of Title II in the Complaint, Plaintiff does not address a Title II claim in his Response. The Court therefore assumes Plaintiff has conceded his Title II claim.

### IV.   Conclusion

Based on the foregoing analysis, the Court finds that no genuine issues of fact remain in this case and all of Plaintiff's claims against Defendants will be dismissed as a matter of law. Defendants' Motion for Summary Judgment must therefore be granted.[3]

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment [docket entry no. 28] is hereby granted. This action is hereby dismissed with prejudice. A Final Judgment reflecting the final resolution of this matter will be entered.

SO ORDERED this the 2nd day of June, 2006.


                                        s/ William H. Barbour, Jr.
                                        UNITED STATES DISTRICT JUDGE

blj

---

[3] Defendants have alternatively argued that Defendants Gene McGee and Mike Crook are entitled to immunity. Because the Court has determined that all of Plaintiff's claim are without merit, the Court need not consider the immunity question.